NUMBER 13-09-00246-CV


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RIO BRAVO SUBDIVISION PROPERTY OWNERS

ASSOCIATION, ON BEHALF OF 203 QUALIFIED

VOTERS IN THE RIO BRAVO SUBDIVISION AND

THE SAID 203 QUALIFIED VOTERS, Appellants,


v.

 

CITY OF BROWNSVILLE, TEXAS, Appellee.

 
 

On appeal from the 107th District Court 

 of Cameron County, Texas.

 


 MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Vela

 Memorandum Opinion by Chief Justice Valdez


 In this appeal, appellants, Rio Bravo Subdivision Property Owners Association, on
behalf of 203 qualified voters in the Rio Bravo Subdivision, and the said 203 qualified
voters (1) (collectively referred to as "Rio Bravo"), complain about a summary judgment
granted in favor of appellee, the City of Brownsville (the "City"), which denied Rio Bravo
relief pertaining to its petition for disannexation and declaratory relief brought under section
43.141 of the local government code. See Tex. Loc. Gov't Code Ann. § 43.141 (Vernon
2008). By two issues, which we construe as one, Rio Bravo contends that the trial court
erred in granting the City's motion for summary judgment because the City acted in bad
faith by failing to provide "additional or new services" to Rio Bravo after annexation. We
affirm.

I. Background

 On November 5, 2002, the City annexed the Rio Bravo Subdivision. In 2005, a
majority of the registered voters residing in the subdivision filed a petition for disannexation
with the City alleging that the City failed to provide services to the subdivision. See id. §
43.141(a). The City failed to act upon Rio Bravo's petition for disannexation within sixty
days after having received it; thus, Rio Bravo petitioned the local district court to request
that the subdivision be disannexed. See id. § 43.141(b) (providing that "[i]f the governing
body fails or refuses to disannex the area within 60 days after the date of the receipt of the
petition, any one or more of the signers of the petition may bring a cause of action in
district court . . ."). This petition alleged that the City failed to provide services and acted
in bad faith because "the City failed to provide additional or new services to the annexed
area . . . ." The petition sought, in part, a judgment "[d]eclaring that under the said Petition
and/or Section 43.141 of the Texas Local Government Code, Rio Bravo is entitled to the
disannexation of the said area . . . ."

 On September 26, 2006, Rio Bravo filed a motion for summary judgment. On
January 24, 2007, the City filed a competing motion entitled "Supplemental Motion for
Summary Judgment or in the Alternative, Plea to the Jurisdiction." The trial court
subsequently denied the City's plea to the jurisdiction on governmental immunity grounds. 
On interlocutory appeal, this Court affirmed the trial court's order. City of Brownsville v. Rio
Bravo Subdivision Prop. Owners Assoc., No. 13-07-554-CV, 2008 WL 384371, at **3-4
(Tex. App.-Corpus Christi Feb. 14, 2008, no pet.) (mem. op.). 

 On January 9, 2009, both parties appeared for jury trial; however, after
"announcements," attorneys from both parties met in chambers with the trial court judge
to discuss various pre-trial motions. Stipulations, signed on February 6, 2009 by both
parties, were entered into evidence and considered by the trial court. The parties
stipulated, in pertinent part:

3) [Rio Bravo] stipulate[s] that the City . . . complied with all procedural
steps for municipal annexation . . . . [Rio Bravo] do[es] not challenge
the legality of said annexation.


4) Municipal disannexation is being sought by [Rio Bravo] solely
pursuant to [Texas Local Government Code section] 43.141 for failure
to provide additional or new municipal services to the Rio Bravo
Subdivision.


 . . . .


12) [Rio Bravo] timely filed this suit for disannexation for failure to provide
additional or new municipal services under [Texas Local Government
Code section] 43.141 . . . . [Rio Bravo] do[es] not contend in this
petition that [the City] failed to provide services as set forth in the
municipal service plan, but rather that the City could not provide them
services which were new or different than that which they were
already receiving before municipal annexation. The City contends
that they fully complied with the service plan and met their legal
obligations to provide municipal services to the annexed area.


 . . . . 


14) The annexed area in question falls within an area served by a
certificate of convenience and necessity by the TCEQ (Texas
Commission for Environmental Quality) to the Valley MUD No. 2 for
sewer and water. Those utilities have not granted permission to [the
City] to provide water or sewer utilities within the areas to which they
hold the exclusive Certificates of Convenience and Necessity. This
legally prohibits the City from providing water and sewer utilities in
these areas.


 . . . .


17) [Rio Bravo] stipulate[s] that the City did provide certain municipal
services after annexation (as set forth in this stipulation), and that the
services which were provided (again, as set forth in this stipulation)
were provided within the time frames set forth by the municipal
service plan and as specified by [Texas Local Government Code
section] 43.056 . . . .


The parties stipulated that the following entities would provide municipal services:




Before Annexation
After Annexation
Police
Cameron County Sheriff's
Office
City of Brownsville Police
Department
Fire
City of Brownsville Fire
Department under an
interlocal agreement with
Cameron County
Emergency Services
District No. One.
City of Brownsville Fire
Department
Emergency Medical
Services
City of Brownsville Fire
Department under an
interlocal agreement with
Cameron County
Emergency Services
District No. One.
City of Brownsville Fire
Department
Solid Waste Collection
Privately contracted
through the County
City of Brownsville through
a private contractor paid
for by the City
Operation and
Maintenance of Water and
Sewer Utilities
Valley Municipal Utility
District No. 2 under a
Certificate of Convenience
and Necessity issued by
TCEQ

Valley Municipal Utility
District No. 2 under a
Certificate of Convenience
and Necessity issued by
TCEQ
Maintenance of Public
Roads and streets
including road and street
lighting
The State of Texas
maintains all state roads.

 Cameron County, Texas
maintains all other public
roads.


 

Rio Bravo maintains some
purely private drives which
are not public streets and
which have never been
dedicated to public use. 
The State of Texas
maintains all state roads.


 The City of Brownsville
maintains all public
streets, roads, and
roadways.


 Rio Bravo maintains some
purely private drives which
are not public streets and
which have never been
dedicated to public use.
Operation and
maintenance of any other
public service
Cameron County
City of Brownsville


 In light of the above stipulations, the trial court determined that there was no
genuine issue of material fact and granted the City's motion for summary judgment while
simultaneously denying Rio Bravo's competing motion for summary judgment. This appeal
ensued.

II. Standard of Review

 The standards of review under which we review traditional and no-evidence motions
for summary judgment are distinct; therefore, we must determine the type of summary
judgment at issue. See Circle X Land and Cattle Co., Ltd. v. Mumford Indep. Sch. Dist.,
No. 14-09-00330-CV, 2010 WL 3409597, at *2 (Tex. App.-Houston [14th Dist.] Aug. 31,
2010, no. pet. h.). In the present case, Rio Bravo's appellate briefing neither states the
applicable standard of review nor indicates whether the motion for summary judgment
being appealed is a traditional, no-evidence, or hybrid motion. See Tex. R. Civ. P. 166a(c)
(providing that in a traditional motion for summary judgment, the movant has the burden
of showing that there is no genuine issue of material fact and it is entitled to judgment as
a matter of law), 166a(i) (setting out that in a no-evidence motion for summary judgment,
a party may move for summary judgment without presenting summary judgment evidence
"on the ground that there is no evidence of one or more essential elements of a claim or
defense on which an adverse party would have the burden of proof at trial"); see also Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004) (explaining that when a party
moves for summary judgment under both rules 166a(c) and 166a(i), "[we] first review the
trial court's summary judgment under the standards of rule 166a(i)"). 

 The City's motion for summary judgment states that it is filed pursuant to Texas Rule
of Civil Procedure "166a and 166(i)." (2) A traditional motion for summary judgment is
granted where the movant shows that "there is no genuine issue of material fact" and that
he is "entitled to judgment as a matter of law on the issues expressly set out in the motion
or in an answer or any other response." Tex. R. Civ. P. 166a(c). The City's motion for
summary judgment mentions that there is "no evidence" that the City failed to comply with
the service plan prepared for Rio Bravo; however, the arguments raised within the motion
do not advance this contention and instead, focus on proving that there is no genuine issue
of material fact and that the City is entitled to judgment as a matter of law. (3) Moreover, after
considering the stipulations, the trial court expressly found in its order granting final
summary judgment that "there is no genuine issue as to any material fact in this case" and
that the City "is entitled to summary judgment (in its favor) as a matter of law on the issues
raised by the pleadings in this case." Accordingly, we construe the City's summary
judgment motion to be a traditional motion. See id.

 We review a summary judgment de novo. Mann Frankfort Stein & Lipp Advisors, 
Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009); Branton v. Wood, 100 S.W.3d 645, 646
(Tex. App.-Corpus Christi 2003, no pet.). The evidence is reviewed in the light most
favorable to the non-movant, and the moving party bears the burden of proof of showing
that there is no genuine issue of material fact and that he is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c); see Fielding, 289 S.W.3d at 848; see also Branton,
100 S.W.3d at 646. When both parties file motions for summary judgment and the court
grants one and denies the other, we must decide all questions presented and render the
judgment that the trial court should have rendered. City of Garland v. Dallas Morning
News, 22 S.W.3d 351, 356 (Tex. 2000); see also Netrana, L.L.C. v. TXU Bus. Servs. Co.,
No. 13-08-00264-CV, 2009 WL 3766575, at *3 (Tex. App.-Corpus Christi Nov. 12, 2009,
no pet.) (mem. op.).

 Statutory construction is a legal question that we review de novo. Entergy Gulf
States, Inc. v. Summers, 282 S.W.3d 433, 437 (Tex. 2009); City of Port Isabel v. Pinnell,
207 S.W.3d 394, 409 (Tex. App.-Corpus Christi 2006, no pet.). Our primary objective in
statutory construction is to give effect to the legislature's intent. See State v. Shumake,
199 S.W.3d 279, 284 (Tex. 2006). In resolving an issue of statutory construction, we first
look to the plain language of the statute. See id. "Where text is clear, text is determinative
of that intent" unless enforcing the plain language would produce absurd results. Entergy
Gulf States, Inc., 282 S.W.3d at 437. We read the statute as a whole and give meaning
to the language that is consistent with other provisions in the statute. Dallas County Cmty.
Coll. Dist. v. Bolton, 185 S.W.3d 868, 872-73 (Tex. 2005); Tex. Dep't of Transp. v. City of
Sunset Valley, 146 S.W.3d 637, 642 (Tex. 2004). We read every word in a statute as if
it were deliberately chosen and presume that words excluded from the statute are done
so purposefully. See Cameron v. Terrell & Grant, Inc., 618 S.W.2d 535, 540 (Tex. 1981);
Pinnell, 207 S.W.3d at 409. "Only when it is necessary to give effect to the clear legislative
intent may we insert additional words or requirements into a statutory provision." Pinnell,
207 S.W.3d at 409.

III. Applicable Law

 Under Texas Local Government Code section 43.141(a), a majority of the qualified
voters of an annexed area may petition the governing body of the municipality for
disannexation for the municipality's failure or refusal to provide services. See Tex. Loc.
Gov't Code Ann. § 43.141(a).

If the governing body fails or refuses to disannex the area within 60 days
after the date of the receipt of the petition, any one or more of the signers of
the petition may bring a cause of action in a district court of the county in
which the area is principally located to request that the area be
disannexed. . . . The district court shall enter an order disannexing the area
if the court finds that a valid petition was filed with the municipality and that
the municipality failed to perform its obligations in accordance with the
service plan or failed to perform in good faith.


Id. § 43.141(b). 

IV. Analysis

 Rio Bravo contends that the trial court erred in granting the City's motion for
summary judgment because the City "failed to perform in 'good faith,'" as required by
section 43.141(b), by failing to provide "additional or new services" to Rio Bravo after
annexation. See id. We disagree.

 A district court must enter an order of disannexation if the court finds that: (1) a
valid petition was filed with the municipality; and (2) the municipality . . . failed to perform
in good faith. See id. This Court has previously determined that Rio Bravo's petition for
disannexation was valid. (4) See Rio Bravo Subdivision Prop. Owners Assoc., 2008 WL
384371, at *3. Rio Bravo supports its contention that the City failed to perform in good faith
by citing the language of section 43.141(a), as well as various case law setting forth the
general tenets of statutory construction. See Tex. Loc. Gov't Code Ann. § 43.141(a). 
Specifically, Rio Bravo asserts that a municipality fails to perform in good faith where it
"fails or refuses to provide services or to cause services to be provided to the [annexed]
area . . . ." Id. Thus, we must determine whether the trial court erred by determining that
the City did not fail or refuse to provide services to Rio Bravo. See id. 

 The plain language of 43.141(a) allows disannexation where a municipality "fails or
refuses to provide services" to an annexed area. See id.; see also Shumake, 199 S.W.3d
at 284. Rio Bravo stipulated that the City provided certain municipal services after
annexation and that the City provided every type of municipal service that it was legally
allowed to provide. Despite these stipulations, Rio Bravo argues that the City failed to
provide services in good faith because it failed to provide "any additional or new services
to the Rio Bravo Subdivision that the subdivision did not already receive prior to the
annexation." (Emphasis in original.) 

 Nothing in the plain language of the statute indicates that a municipality must
provide new or additional services to an annexed area. See Tex. Loc. Gov't Code Ann.
§ 43.141(a). Moreover, Rio Bravo does not contend, and we do not conclude, that
enforcing the plain language of section 43.141 would lead to absurd results. See Entergy
Gulf States, Inc., 282 S.W.3d at 437. Although Rio Bravo asserts that we may consider
"the (1) object sought to be attained, (2) circumstances under which the statute was
enacted, (3) legislative history, (4) common law or former statutory provisions including
laws on the same or similar subjects, (5) consequences of a particular construction, (6)
administrative construction of the statute, and (7) title (caption), preamble, and emergency
provision," to determine the legislative intent, Rio Bravo provides no argument advancing
any of these factors. Because we read every word in a statute as if it were deliberately
chosen and presume that words excluded from the statute are done so purposefully, see
Cameron v. Terrell & Grant, Inc., 618 S.W.2d 535, 540 (Tex. 1981); Pinnell, 207 S.W.3d
at 409, we do not interpret "fails or refuses to provide services" to mean "fails or refuses
to provide additional or new services." See Pinnell, 207 S.W.3d at 409 (providing that we
do not "insert additional words or requirements into a statutory provision" unless the
insertion is necessary "to give effect to the clear legislative intent"). Thus, Rio Bravo's
argument that section 43.141 allows for disannexation because the City failed to provide
new or additional services is meritless. Accordingly, the trial court did not err in
determining that the City was entitled to summary judgment as a matter of law. See Tex.
R. Civ. P. 166a(c); Fielding, 289 S.W.3d at 848. We overrule Rio Bravo's sole issue on
appeal.

V. Conclusion

 We affirm the judgment of the trial court.

 ROGELIO VALDEZ

 Chief Justice

 


Delivered and filed the 

7th day of October, 2010. 
1. Only 156 voters are identified in the record. The 156 voters are identified as: James E. Regan;
Margie Jane Regan; Norman Elwood Kight; Russell Leibundgut; Charles A. Morgan, Jr.; Zonda Ione Morgan;
Joseph John O'Mara; Ronald J. Herfindahl; Gerald D. Short; Marilyn J. Short; Paul J. Slenk; Thomas D.
Heuerman; Karen L Heuerman; George W. Whitaker; Donis Ilene Whitaker; Keith E. Bell; Edwad J.
Rademacher; Magdalen Rademacher; Patricia Jane Fry; James D. Payne; Ron G. Brown; Bruce A. Watts;
William M. Moline; Joan M. Moline; Bobby G. Wood; Altonette L. Wood; Teresa Barton Holloway; Marvin D.
Basye; Pamela S. Basye; Joan Lorene Robinson; Gail E. Peterson; William C. Cronin; Shanon K. Cronin;
John Alden Coleman; Thomas M. Fowler; Janet Jean Stowe; Edward F. Bares; Gail C. Bares; Dale R. Fields;
Mary Ellen Fields; Robert D. Roberts; Winfred Riddle; Charles E. Stowe. Jr.; Russell R. Zimmerman; John
H. Meyers; Jutta E. Doersam; Donald L. Shafer; Roxann Shafer; Alan Thoms James; Joseph E. Travis; Janice
M Travis; Thomas C. Hartman; Helen A. James; Gene E. Mehrtens; Elizabeth A. Mehrtens; Donald E.
Holmes; Mary C. Holmes; Jose Alvarez, Jr.; Roberta D. Alvarez; Gerald P. Olsen; Genevieve D. Olsen; Dean
I. Moon; Colleen A. Moon; Elroy G. Meyer; Beata R. Meyer; James E. Link; Norma J. Link; Karl H. Coleman;
Priscilla A. Coleman; Willis G. Apt; Anne M. Apt; David M. Scott; Patricia J. Scott; Richard L. Menard; Shirley
C. Menard; John R. Mapel; Ronald W. Johnson; Jack E. Davis; Betty R. Henning; Robert L. Nowak; Maxine
J. Nowak; Douglas R. Keene; Betty Keene; Stanley G. Coates; Mary A. Beard; Lawrence B. Schmitt; Joanne
M. Meyers; Aloysius Meyers; Tyler D. Collins; Hazel Leanita Coleman; Luther L. Watson; Glenda K. Berger;
Ann Williams Shepperd; Benny M. Berger; Doris Irene George; John Lloyd George; Juanita Vaughan; Allen
John Freund; Anita Lenore Freund; Imogene Morgan; August E. Morgan; John Arthur Winn; Helen Catherine
Winn; Joel Zapata; Marlys Zapata; Ellen Kathleeen Anderson; Lester D. Cowger; Patricia Ann Cowger; Ray
Edward Church; Betty Jo Johnson; Earl George Sneath; Alice Marie Sneath; J. Robert Buckley; Beverly W.
Buckley; Glen Mullikin; Mary Ann Watson; Fred Charles Mottson; Ellen Marie Elfrank; Dale Colberg; Robert
Mitchell Aman; James Burcham; Laura Ann Osgood; Elda M. Corbit; Edward Allan Zeppelin; Richard Grant
Peterson; Francis Duane Richman; Mary Alice Zimmermann; Ira F. Watkins; Jackie Newell Bearrow; Barbara
Idelle Bearrow; Jan A Pausewang; Irene T. Zeppelin; David C. Odle; Allison Odle; Raymond James Kirk; Lois
Harriet Kirk; Dale Eugene Stevens; Nancy Lee Stevens; Herbert D. Campbell; Melvin Eugene Hammond;
Dianne Lynn Hammond; Maurice D. Miller; Sara W. Miller; Gerald R. Crisp; Alice Lorraine Crisp; Leonard
Vihorio Gionnetti; Richard Ray May; Julie A. May; Frederick Dwight Stephens; Barbara J. Stephens; Bobby
Gene Taylor; Burrell L. Walters, Jr.; John Thomas Head; and Nadine Hargraves.
2. We note that Rule 166(i) does not pertain to summary judgments. See Tex. R. Civ. P. 166(i)
(providing that the trial court may direct the attorneys for the parties to appear before it for a conference to
consider the exchange of a list of expert witnesses who the parties will call to testify at trial). Presumably, the
City intended to cite Texas Rule of Civil Procedure 166a(c) and 166a(i). See id. at R. 166a(c), (i). 
3. The City's motion for summary judgment states, "This Motion is filed as . . . a Motion for Summary
Judgment, pursuant to TRCP 166(a). . . . [T]he Defendant would show that there is no issue of material fact,
and this Defendant is entitled to judgment as a matter of law."
4. A petition is valid if: "(1) a majority of qualified voters of the annexed area . . . have filed a petition
with the city alleging a failure to provide services within the applicable time period; and (2) sixty days . . . have
passed since the city received the petition." City of Brownsville v. Rio Bravo Subdivision Prop. Owners
Assoc., No. 13-07-554-CV, 2008 WL 384371, at *3 (Tex. App.-Corpus Christi Feb. 14, 2008, no pet.) (mem.
op.) (citing Tex. Loc. Gov't Code Ann. § 43.141). Both parties stipulated that "On January 28, 2005, [Rio
Bravo] delivered to the City of a Petition for Disannexation for failure to provide new or additional services,
signed by the majority of the qualified voters in the annexed area as provided for in [Texas Local Government
Code section] 43.141 . . . ." Moreover, the parties agreed that Rio Bravo "complied with all (statutory)
procedural prerequisites to the filing of [the suit for disannexation]."