

# NUMBER 13-20-00513-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **CITY OF CORPUS CHRISTI, TEXAS,** | **Appellant,** |
| **v.** | |
| **CITY OF INGLESIDE, TEXAS,** | **Appellee.** |

### On appeal from the 156th District Court of San Patricio County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant the City of Corpus Christi, Texas appeals the trial court's judgment in favor of appellee the City of Ingleside, Texas, which permits Ingleside to exercise jurisdiction over and tax "wharves, piers, docks, and similar man-made structures that (a) originate on certain land which is either within [its] city limits or is within its extra territorial jurisdiction and that (b) project into adjacent waters of Nueces Bay and Corpus Christi

Bay." By one issue, Corpus Christi contends the trial court improperly concluded that structures attached to the shoreline, which extend into the water, belong to Ingleside. We affirm.

## I.     PERTINENT FACTS

Ingleside filed suit against Corpus Christi on December 14, 2011, seeking a declaration that it was permitted to exercise jurisdiction over and tax "wharves, piers, docks, and similar man-made structures that (a) originate on certain land which is either within [Ingleside's] city limits or is within its extra territorial jurisdiction and that (b) project into adjacent waters of Nueces Bay and Corpus Christi Bay." On May 22, 2019, Ingleside filed a motion for a partial traditional summary judgment arguing that because it had annexed the northern shoreline of the bays, it had jurisdiction over the structures and property in the waters of the bays.

On June 24, 2019, Ingleside's live pleading alleged that the issue before the trial court had been "definitively resolved" in *In re Occidental Chemical Corp.* 561 S.W.3d 146 (Tex. 2018) ("*Oxy*") Ingleside argued that "The fast land area of San Patricio County in which the Oxy structures and related facilities at issue are affixed are within the city limits, or boundary, of Ingleside." According to Ingleside, the facilities include "all the structures at issue that extend outward from Ingleside's mainland over the waters of the La Quinta Channel/Corpus Christi Bay, [and] are part of Ingleside for the same reasons Oxy's Alpha and Beta Piers were determined in [*Oxy*] to be part of San Patricio County." Ingleside, therefore requested that the trial court issue a summary judgment

> declaring as a matter of law that "shoreline" as used in the Shoreline Ordinances includes structures attached to the fast land in Ingleside,

2

including the entirety of those structures which extend into and over the water, and therefore (1) the Ingleside Shoreline Area is squarely within the meaning of "shoreline" as used to define Ingleside's municipal jurisdiction, and (2) the Ingleside Shoreline Area, including the Structures, is within Ingleside's municipal boundary.

Ingleside sought a declaration: (1) construing the legal meaning of the term "shoreline" as a jurisdictional boundary"; (2) clarifying the areas landward and seaward of the "shoreline" in which Ingleside and Corpus Christi have the respective rights, duties and obligations of municipal governance, including, without limitation, the duties and obligations to provide essential municipal services" including, among other things, street maintenance, medical, law enforcement and fire department services; and (3)

[that] as a matter of law . . . "shoreline" as used in the Shoreline Ordinances includes structures attached to the fast land in Ingleside, including the entirety of those structures which extend into and over the water, and therefore (1) the Ingleside Shoreline Area is squarely within the meaning of "shoreline" as used to define Ingleside's municipal jurisdiction, and (2) the Ingleside Shoreline Area, including the Structures, is within Ingleside's municipal boundary. The Court's summary judgment should of course include a declaration that Ingleside, not Corpus Christi, is entitled to receive ad valorem taxes generated from the Structures at issue here, including, without limitation, Oxy's Alpha and Beta Piers.

Corpus Christi, likewise, filed a competing motion for summary judgment, and on July 2, 2019, the trial court held a summary judgment hearing. On July 8, 2019, the trial court granted Ingleside's motion for summary judgment and denied Corpus Christi's motion. Ingleside moved for entry of partial judgment on August 12, 2019 requesting an "interlocutory judgment." Corpus Christi filed objections to the proposed partial "interlocutory judgment" and a motion to set aside and vacate the prior summary judgment arguing that *Oxy* does not apply to the facts of this case. Ingleside responded on

3

December 6, 2019 arguing that Corpus Christi never disputed the material facts of this case; thus, *Oxy* applies.

On December 13, 2019, the trial court signed an "interlocutory judgment" in favor of Ingleside. The trial court recognized that "the cities share a common boundary, which is at the shoreline of Corpus Christi Bay," and it declared, in pertinent part that (1) Ingleside "has not annexed any territory already within the city limits or extraterritorial jurisdiction of the City of Corpus Christi," (2) Ingleside's jurisdiction "extends to the shoreline and includes all piers, docks, bulkheads, wharves, and similar facilities and structures that are attached to the 'fast land' or as they become attached to the 'fast land' and includes the entirety of any such facility or structure which extends into and over the waters of Corpus Christi Bay," and (3) "all such structures are within the municipal boundary of the City of Ingleside," which can tax those properties. On October 27, 2020, the trial court signed a final judgment stating, "By its own terms, the Interlocutory Judgment 'disposes of all claims in this lawsuit with the exception of City of Ingleside's claim for costs under the [Uniform] Declaratory Judgments Act, including reasonable and necessary attorney's fees and expenses.'" The trial court noted that it held a hearing on September 30, 2020, on the issue of attorney's fees and expenses and awarded attorney's fees to Ingleside. This appeal followed.

## II. STANDARD OF REVIEW

The trial court's granting of a traditional motion for summary judgment is reviewed de novo. *Franks v. Roades*, 310 S.W.3d 615, 620 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215

4

(Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.)). "We must determine whether the movant met its burden to establish that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law." *Id.* When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we consider the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018).

## III.   DISCUSSION

By its sole issue, Corpus Christi contends that Ingleside improperly annexed an area of water containing structures attached to the shoreline that is within Corpus Christi's jurisdiction and that because the structures in the water are partly in its jurisdiction, Corpus Christi is entitled to received ad valorem taxes generated by these structures. Ingleside argues that the trial court properly determined that the structures should be treated as part of the land as held by the Texas Supreme Court in *In re Occidental Chemical Corp.*, 561 S.W.3d at 150. It is undisputed that the boundary between Corpus Christi and Ingleside is located at the natural shoreline and that the structures, which include piers and similar facilities, are constructed on Ingleside land but extend into and over water that is within Corpus Christi's jurisdiction.

In *Oxy*, the Texas Supreme Court analyzed "whether piers and similar facilities constructed along a shoreline that forms the boundary between two local jurisdictions should be treated as part of the land or part of the water." *Id.* at 163. The parties, San

5

Patricio County and Nueces County disputed the boundary between them.[1] *Id.* at 150. Both counties had for years "taxed the same piers, docks, and other facilities affixed to the land—San Patricio County—but extending out into the water—Nueces County." *Id.* Oxy owned "two massive commercial piers extending from the mainland of San Patricio County into the waters of Corpus Christi Bay that lie in Nueces County." *Id.* Oxy had paid taxes to both San Patricio and Nueces Counties and did not take a side wishing merely to be relieved of double taxation. *Id.*

Persuaded by authority from other jurisdictions, the *Oxy* court agreed that "piers should be treated as an extension of the shoreline rather than as a part of the [water]." *Id.* at 163–64. The *Oxy* court reasoned that "[t]his result is consistent with the common law and statutory rights of littoral and riparian owners. The right to construct docks, piers, and similar facilities is subservient to the ownership of property abutting the natural shoreline." *Id.* at 164. The *Oxy* court stated that "Nueces County cannot practically render services such as fire and police protection to Oxy's Piers, while San Patricio County can easily access the Piers from the land" and "Nueces County can do little, if anything, to improve the value of Oxy's Piers, and nothing to provide public conveniences, as San Patricio County can." *Id.* at 163. The court further pointed out that "[t]he common law . . . firmly recognizes that the right to construct docks, piers, and similar facilities from the shore into the water springs from the ownership of the upland property bordering the shore, rather than from the submerged lands on which portions of those facilities are constructed," and therefore, the common law "supports treating docks, piers, and similar permanent

---

[1] Ingleside is located in San Patricio County and Corpus Christi is located in Nueces County.

6

facilities that are connected to the mainland of San Patricio County as a part of that county." *Id.* at 165. Ultimately, the supreme court determined that Nueces County could not tax Oxy. *Id.* (directing "the Nueces County Appraisal District to withdraw and cease from issuing tax assessments to Oxy for its Piers and other facilities which we have held to be part of San Patricio County").

This dispute is analogous to the dispute in *Oxy. See id.* Here, the undisputed evidence shows that the structures located on the water are connected to the mainland located in Ingleside. Some are the very same structures that were the subject of the *Oxy* dispute. *See id.* Therefore, for the reasons stated in *Oxy*, we similarly conclude that the "piers, docks, bulkheads, wharves, and similar facilities and structures that are constructed and attached to the 'fast land'" are part of Ingleside's jurisdiction as a matter of law.[2] *See id.* We overrule Corpus Christi's sole issue.[3]

## IV.   CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
16th day of June, 2022.

---

[2] The *Oxy* court stated that it was not "reasonable "to consider Oxy's piers as spine-like extensions of San Patricio County's boundary." *In re Occidental Chem. Corp.*, 561 S.W.3d 146, 163 (Tex. 2018). Likewise, here we do not consider the structures at issue as extensions of Ingleside. *See id.* Thus, our decision does not change the boundary between Corpus Christi and Ingleside. As in *Oxy*, we are merely clarifying which side may tax the structures on the water, which is undisputedly in Corpus Christi's jurisdiction. *See id.* Moreover, we emphasize that a city's boundary cannot be infringed upon by another city annexing property in another city's jurisdiction.

[3] By a sub-issue to its first issue, Corpus Christi argues that if we reverse the trial court's judgment, then we must reverse its award of attorney's fees to Ingleside. Because we have not reversed the judgment, we need not address this issue. *See* TEX. R. APP. P. 47.1.

7